_____

Docket No.:  3:17-cv-01397-ARC
_____

# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JESUS JOSE PALMERONI

Appellant

v.

N.V.E., INC.

Appellee
_____

Appeal of Order dated July 24, 2017
of the United States Bankruptcy Court
For the Middle District of Pennsylvania
(J. Thomas), Case No.: 5:16-bk-03073
_____

**APPELLANT'S BRIEF**
_____

DAVID J. HARRIS, ESQUIRE
Suite 700 – 69 Public Square
Wilkes-Barre, PA 18701
Telephone: (570) 823-9400
e-mail: dh@lawofficeofdavidharris.com

# <u>TABLE OF CONTENTS</u>

<u>CORPORATE DISCLOSURE STATEMENT</u>……………..……………....1

<u>BASIS OF APPELLATE JURISDICTION</u>……...…………………………1

<u>STATEMENT OF ISSUE AND<br>APPLICABLE STANDARD OF APPELLATE REVIEW</u>………..…..……2

       <u>Statement of Issue</u>

       <u>Applicable Standard of Appellate Review</u>

<u>STATEMENT OF THE CASE</u>……………………..………….…..… 3

<u>SUMMARY OF ARGUMENT</u>………..……………………….....…..…5

<u>ARGUMENT</u>……………………………………………………..…....…7

      A. <u>Introduction</u>

      B. <u>The Substantial Compliance and Relation Back Doctrines</u>……….9

      C. <u>Analysis</u>……………………………………………....…..…18

           i.     <u>Stated Intention to File A Complaint in the Future Precluded<br>Treating the Plan Objection as a Complaint</u>

          ii.    <u>The Plan Objection Fails to Comply with the "Rules of<br>Pleading"</u> …………………………………………….... 20

  <u>CONCLUSION</u>……………………………………………………24

Certification of Compliance with Fed. R.B.P 8015(a)(7)…..…EXHIBIT "A"

i

# TABLE OF AUTHORITIES

## Federal Cases

*City of Farrell v. Sharon Steel Corp*., 41 F.3d 92, 95 (3d Cir. 1994) …..…………1

*Covert v. McGuirt*, 879 F.2d 182, 184 (5th Cir. 1989) …….….……....10, 17, 19, 21

*First National Bank in Okeen v. Barnes*, 956 F.2d 277 (10th Cir. 1992)……….…..9

*Fulbright & Jaworski v. Sunbeam-Oster Co. (In re Allegheny Int'l., Inc.)*, 139 B.R. 336, 337 (W.D. Pa. 1992) ………………………………...................................1

*In re Alton*, 837 F. 2d 457, 459 (11th Cir. 1998)………………………………….9

*In re Cinchiak*, 406 F. 3d 214, 221-222 (3d Cir. 2005)…………………………….3

*In re Command Services Corp.* 102 B.R. 905 (Bankr. N. D. N.Y 1989) ………...20

*In re Dominguez*, 51 F.3d at 1502 (9th Cir. 1995)……………...10, 13, 14, 20, 23

*In re Fellheimer*, 443 B.R. 355, 372 (Bankr. E.D. PA. 2010)……………………...9

*In re Forever Green Athletic Fields, Inc*., 804 F.3d 328, 338 footnote 1 (3d Cir. 2015) ……………………….........................................................................2, 3

*In re Kennerley*, 995 F.2d 145, 147 (9th Cir. 1993) ……………………….........11

*In re Marino*, 37 F.3d 1354 (9th Cir. 1994) …………………………………..9, 10, 11, 12, 14, 15, 19, 20, 21, 24

*In re Mercado-Jimenez*, 193 B.R. 112, 117 (D. Puerto Rico 1996) …..……...........3

*In re Orfa Corp. of Philadelphia*, 170 B.R. 257 (E.D. Pa 1994) ………………………………………………………….…………....20

*In Pfeiffer v. Rand (In re Rand*), 144 B.R. 253 (Bankr. S.D.N.Y. 1992)………....23

*In re Rowlands,* 275 B.R. 209, 215 (Bankr E.D. Pa. 2002)………………………..9

*In re Siciliano*, 13 F.3d 748, 750 (3d Cir. 1994) ………….………………….......3

*Le Grand v. Harbaugh (In re Harbaug*h), 301 B.R. 317, 320 (B.A.P. 8th Cir. 2003)………………………………………………………………………………..9

*Kearns v. Ford Motor Co*., 567 F.3d 1120, 1124 (9th Cir. 2009)………………………………………………………………….........16, 17, 21

*Markus v. Gschwend (In re Markus)*, 313 F.3d 1146, 1150-51 (9th Cir. 2002) ……………………………...................................................................10, 14, 15, 20, 22

*Mellon Bank, N.A. v. Official Comm. Of Unsecured Creditors of R.M.L., Inc. (In re R.M.L.)*, 92 F.3d 139, 147 (3d Cir. 1996) …………………………………………1

*Miller v. Levine (In re Levine)*, 132 B.R. 464, 465 (Bankr. M.D. Fla. 1991)…….24

*Miyasaki v. Lui (In re Lui)*, Adv. 12-05220, Opinion at page 11, (B.A.P. 9th Cir. 2014) …………….………..……………………………………………………………16

*Moore v. Kayport Package Express*, 885 F.2d 531, 540 (9th Cir. 1989) ……………………………………………………………………………………….17

*Neeley v. Murchinson*, 815 F.d 345, 347 (5th Cir. 1987)…………………….……..9

## Federal Statutes and Rules

11 U.S.C §523 …...….….……………………….…….……….…….…....…6, 24

11 U.S.C §523(a) …...…………………………………………………..…….…21

11 U.S.C §523(c) …...…………………………………………………….…1, 7

11 U.S.C §341(a) ……………………………….........................................7, 8

11 U.S.C §1141(d)(3) ……………………………….....................................13

11 U.S.C §1328(c)(2) …………………………………….........................21

28 U.S.C. §157(b)(2)(I) …………………….…………………….…….………………1

28 U.S.C. §158(a)(1)……………………….…………………….……….……...…1

28 U.S.C. § 1334(b) …………………….……………….…….………………..…….1

Federal Rule of Bankruptcy Procedure  4004(a)……………………….…….…..13

Federal Rule of Bankruptcy Procedure  4007(a)……………………...…….…….7

Federal Rule of Bankruptcy Procedure  4007(c)…………………..…….…2, 3, 4, 5, 6, 7, 9, 10, 11, 16, 17, 18, 19, 21, 24

Federal Rule of Bankruptcy Procedure  4007(e)…………………….…….…………...12

Federal Rule of Bankruptcy Procedure 7008………………………….6, 12, 15, 21

Federal Rule of Bankruptcy Procedure 7008(a)  ……………………..12, 14, 16, 20

Federal Rule of Bankruptcy Procedure 7009 ……………………….......……….15

Federal Rule of Bankruptcy Procedure 7015 ……………………….......……….10

Federal Rules of Civil Procedure, Rule 3  ……………………...……….……...12

Federal Rules of Civil Procedure, Rule 7(a) ……………………………..….……12

Federal Rules of Civil Procedure, Rule 8 …………….…..………………..6, 12, 20

Federal Rules of Civil Procedure, Rule 8(a) …………….…..……..... 12, 16, 15, 19

Federal Rules of Civil Procedure, Rule 9 ……………………..……....   6, 21, 23

Federal Rules of Civil Procedure, Rule 9(b) ……………….…...6, 16, 17, 21, 22

Federal Rules of Civil Procedure, Rule 10(a) ……………………………..…….…12

Federal Rules of Civil Procedure, Rule 15(c) …………….…...………………..…10

iv

## CORPORATE DISCLOSURE STATEMENT

Submission of a corporate disclosure statement is not relevant in this appeal, as the Appellant, Jesus Jose Palmeroni ("Palmeroni"), is an individual.

## BASIS OF APPELLATE JURSIDICTION

The Bankruptcy Court had subject matter jurisdiction over the underlying matter pursuant to 28 U.S.C. §1334(b), 28 U.S.C. §157(b)(2)(I) and 11 U.S.C. §523(c), because the matter constituted a core proceeding involving the determination of the dischargeability of an unliquidated, disputed debt of a bankruptcy debtor and the application of the "relation back doctrine" to a late-filed pleading.

The District Court has jurisdiction over this appeal pursuant to 28 U.S.C. §158(a)(1). *See, Mellon Bank, N.A. v. Official Comm. Of Unsecured Creditors of R.M.L., Inc. (In re R.M.L.)*, 92 F.3d 139, 147 (3d Cir. 1996); *See also, City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95 (3d Cir. 1994); *Fulbright & Jaworski v. Sunbeam-Oster Co. (In re Allegheny Int'l., Inc.)*, 139 B.R. 336, 337 (W.D. Pa. 1992).

The Bankruptcy Court Opinion and Order which form the subject of this appeal were entered on July 24, 2017. [Dkt. #97; #98][1][App. pp. 001-005].

---

[1]   The Appellant's references are as follows: (a) <u>Bankruptcy Court Docket Number</u> as [Dkt #__ ]; and (b) <u>Appendix Page Number</u> as [App. p. __ ].

1

Palmeroni timely filed his Notice of Appeal on August 7, 2017. [Dkt. #102][App. 006-007].

## STATEMENT OF ISSUE
## AND APPLICABLE STANDARD OF APPELLATE REVIEW

### Statement of Issue

WHETHER THE BANKRUPTCY COURT ERRED IN ITS OPINION AND BY ITS ORDER OF JULY 24, 2017 BY HOLDING THAT N.V.E., INC. ("NVE") COULD EFFECTIVELY CONVERT ITS OBJECTION TO PALMERONI'S CHAPTER 13 PLAN INTO A COMPLAINT OBJECTING TO DISCHARGEABILITY, SO THAT THE COMPLAINT WOULD BE DEEMED TO BE TIMELY FILED NOTWITHSTANDING THAT NVE DID NOT FILE A COMPLAINT OBJECTING TO DISCHARGEABILITY BY THE DEADLINE PRESCRIBED BY BANKRUPTCY RULE 4007(C).

Proposed Answer: YES, the Bankruptcy Court erred as a matter of law by allowing NVE to effectively convert its objection to Palmeroni's chapter 13 plan into a timely-filed complaint to determine dischargeability.

### Applicable Standard of Appellate Review

The District Court employs the same standard of review over the Bankruptcy Court's decision as that exercised by the Court of Appeals. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous. *In re Forever Green Athletic Fields, Inc*., 804 F.3d 328, 338

footnote 1 (3d Cir. 2015) ("*Forever Green*"), *citing In re Cinchiak*, 406 F. 3d 214, 221-222 (3d Cir. 2005); *In re Siciliano*, 13 F.3d 748, 750 (3d Cir. 1994); *In re Mercado-Jimenez*, 193 B.R. 112, 117 (D. Puerto Rico 1996). Conclusions of law are reviewed *de novo. Forever Green, supra*; *Insurance Co. of N. Am. v. Cohn (In re Cohn)*, 54 F. 3d 1108, 113 (3d Cir. 1995); *In re Mercado-Jimenez, supra*.

The District Court's determination as to whether the Bankruptcy Court erred in allowing NVE to effectively convert its objection to Palmeroni's chapter 13 plan into a timely-filed complaint to determine dischargeability requires a legal conclusion, which is reviewed *de novo*. Specifically, challenges to the application of the "relation back doctrine" are reviewed *de novo*.  Glover v. F.D.I.C., 698 F.3d 139, 144 (3d Cir. 2012).

## STATEMENT OF THE CASE

Palmeroni filed a petition under chapter 13 of the Bankruptcy Code on July 27, 2016. [Dkt. #1]. The first date for the meeting of creditors was August 29, 2016. [Dkt. #7][App. p. 008]. The 60-day deadline for filing complaints regarding dischargeability pursuant to Bankruptcy Rule 4007(c)[2] was October 28, 2016. [Dkt. #7.] [App. p. 008].

---

[2]      Unless otherwise indicated, all section references are to sections of the <u>United States Bankruptcy Code</u>, at Title 11 of the United States Code (the "Bankruptcy Code"). <u>Federal Rules of Civil Procedure</u> are referred to as "Rule" or "Rules."  <u>Federal Rules of Bankruptcy Procedure</u> are referred to as "Bankruptcy Rules," unless in context it is clear that a reference to a Bankruptcy Rule is intended.

NVE failed to file a complaint regarding the dischargeability of Palmeroni's debts prior to the October 28, 2016 deadline. NVE also failed to file a motion pursuant to Bankruptcy Rule 4007(c) to extend the deadline.

NVE did file, however, an objection to Palmeroni's chapter 13 plan ("Plan Objection") *almost one month* prior to the October 28, 2016 deadline, declaring that "NVE *will be filing* a complaint to determine dischargeability." (Emphasis added.) [Dkt. #24][App. pp. 009-012].

On March 17, 2017, NVE filed a Motion for Leave to Amend Prior Pleading and a Brief in support of the Motion ("Motion to Amend") seeking leave to effectively convert its Plan Objection into a timely-filed complaint to determine the dischargeability of a disputed, unliquidated debt of Palmeroni and to enable it to file an adversary complaint setting forth specific facts to support its non-dischargeability claim. [Dkt. #64.]

After the Bankruptcy Court issued its Order of July 24, 2017 granting the relief sought by the Motion to Amend, NVE filed an Adversary Complaint on August 11, 2017.  [Dkt. #107][App. pp. 013-018].

It is the Court's Opinion and Order of July 24, 2017 granting the relief sought by NVT in its Motion to Amend that is the subject of this appeal.

4

## SUMMARY OF ARGUMENT

NVE failed to file a complaint to determine dischargeablity of a disputed, unliquidated debt of Palmeroni by the deadline date set forth in Bankruptcy Rule 4007(c).  NVE also failed to seek an extension of the deadline to do so.

Courts of Appeal have strictly construed Bankruptcy Rule 4007(c) and for that reason among other reasons, NVE's Plan Objection should not be construed to be a timely-filed complaint objecting to dischargeability.

While exceptions to the Bankruptcy Rule 4007(c) have been applied where unique or extraordinary circumstances exist, where a court explicitly misleads a party, or where an earlier-filed document substantially complies with the rules of pleading to render the document to be a complaint, no such exception is applicable in this case. Moreover, the Third Circuit has never acknowledged that an exception to the strict construction of Bankruptcy Rule 4007(c) exists exists.

At the outset, and of significance is that, NVE's Plan Objection declared that, "NVE *will be filing* a complaint to determine dischargeability." (Emphasis added.)

The logical and indisputable interpretation of this statement is NVE's clear acknowledgement that the Plan Objection was not in fact a dischargeability complaint, because NVE expressly stated that it intended to file a complaint to determine dischargeability, ostensibly sometime in the future.

5

Rather than stating that it *intended to file* a complaint, NVE had the option to either file a complaint within the Rule 4007(c) deadline period, which it did not do, or it could have filed a motion to extend the 60-day deadline as is permitted by Rule 4007(c), which it also did not do.

Aside from NVE's stated intention, the Plan Objection failed to comply with the rules of pleading. Simply, it did not comply with Federal Rules of Civil Procedure, Rules 8 and 9 and Bankruptcy Rule 7008 to enable it to be construed as, or deemed to be, a timely-filed dischargeability complaint under the "relation back doctrine."

Specifically, the Plan Objection failed under Rule 8 and Bankruptcy Rule 7008 to state the grounds for the court's jurisdiction and whether the proceeding was a core or non-core proceeding. It also failed to plead the necessary facts to meet the elements of the Section 523, the non-dischargeabilty provision of the Bankruptcy Code.

Moreover, the Plan Objection failed to plead with particularity the facts constituting Palmeroni's alleged fraud to satisfy Rule 9(b), although NVE came closer to doing so when it filed it Adversary Complaint after the Bankruptcy Court issued its order granting it leave to amend the Plan Objection. Nevertheless, the Plan Objection made only summary references without specifically-pleaded facts.

Lastly, in examining the content of the Plan Objection as a whole, its purpose appears clearly aimed at defeating confirmation of Palmeroni's chapter 13 plan and not at objecting to his discharge.

For these reasons, the Bankruptcy Court erred by issuing its July 24, 2017 Order that effectively enabled NVE to convert the Plan Objection to a complaint objecting to dischargeability, so that the complaint would be deemed to be timely filed. Accordingly, NVE's Motion to Amend should be denied.

## ARGUMENT

### A. Introduction

Bankruptcy Rule 4007(a) provides that a "creditor may file a complaint to obtain a determination of the dischargeability of any debt." Fed. R. Bankr. P. 4007(a).

Bankruptcy Rule 4007(c) contains a limitation for filing complaints regarding dischargeability, as it provides in relevant part that, "…a complaint to determine the dischargeability of a debt under §523(c) shall be filed no later than 60 days after the first date set for the meeting of creditors under §341(a)." Fed. R. Bankr. P. 4007(c).

Bankruptcy Rule 4007(c) provides further that, "…[o]n motion of a party in interest, after hearing on notice, the court may for cause extend the time fixed

under this subsection. The motion *shall* be filed before the time has expired."
(Emphasis added.)

In Palmeroni's bankruptcy case, NVE failed to file a complaint to determine the dischargeability of a disputed, unliquidated debt of Palmeroni within the 60-day period following the first date set for the meeting of creditors under §341(a).[3]

NVE also failed to file a motion to extend the 60-day deadline.

NVE did file, however, an objection to Palmeroni's chapter 13 plan ("Plan Objection") declaring that "NVE *will be filing* a complaint to determine dischargeability." (Emphasis added.)  It filed the Plan Objection on September 30, 2016, *almost one month* prior to the 60-day deadline for filing a dischargeability complaint. [Dkt. #24][App. pp. 009-012].

On March 17, 2017, NVE filed a Motion for Leave to Amend Prior Pleading and a Brief in support of the Motion ("Motion to Amend") seeking leave to effectively convert its Plan Objection into a timely-filed complaint to determine the dischargeability of the disputed, unliquidated debt of Palmeroni and to enable it to file an adversary complaint setting forth the specific facts to support its non-dischargeability claim. [Dkt. #64.]

---

[3]   The first date set for the meeting of creditors was August 29, 2016. The 60-day deadline expired on October 28, 2016. [Dkt. 7][App. p. 008].

NVE ultimately filed an Adversary Complaint on August 11, 2017, after the Bankruptcy Court issued its order of July 24, 2017 granting the relief sought by the Motion to Amend.  [Dkt. 107][App. pp 013-019].

It is the Court's Order of July 24, 2017 that is the subject of this appeal.

## B. <u>The Substantial Compliance and Relation Back Doctrines</u>

The Court of Appeals for the Ninth Circuit has held that Bankruptcy Rule 4007(c) must be strictly construed. *In re Marino*, 37 F.3d 1354 (9th Cir. 1994). The Court of Appeals for the Third Circuit has never acknowledged that an exception to a strict interpretation of Rule 4007(c) exists.

However, the Bankruptcy Court for the Eastern District of Pennsylvania, after reviewing many opinions of other courts, asserted that, "the Third Circuit would interpret Rule 4007(c) similarly, and we hold here that the deadline in the rule is jurisdictional.[4] The rule's plain language, and it[s] specific exception from the rule pertaining to enlargement…evince a clear intent to limit the deadline for nondischargeability actions. *In re Rowlands*, 275 B.R. 209, 215 (Bankr. E.D. Pa. 2002). The Bankruptcy Court asserted further that, "a strict reading of Rule 4007(c) is required and the [creditor's] [m]otion [in this case] must be denied." Id. at 216.

---

[4]   *See also*, *First National Bank in Okeen v. Barnes*, 956 F.2d 277 (10th Cir. 1992); *Neeley v. Murchinson*, 815 F.d 345, 347 (5th Cir. 1987); *In re Alton*, 837 F. 2d 457, 459 (11th Cir. 1998); 301 B.R. 317, 320 (B.A.P. 8th Cir. 2003). *Cf., In re Fellheimer*, 443 B.R. 355, 372 (Bankr. E.D. PA. 2010)(noting that F.R.B.P. 4007(c) is not jurisdictional, but statutory deadlines are subject to defenses of waiver, estoppel and equitable tolling).

Some courts have concluded, however, that, although untimely, a bankruptcy court may consider a nondischargeability complaint to be timely filed based on the doctrines of substantial compliance and relation back of amended pleadings.[5] *In re Marino* (finding no substantial compliance); *In re Dominguez*, 51 F.3d at 1502 (9th Cir. 1995) (finding substantial compliance and relation back); *Markus v. Gschwend (In re Markus)*, 313 F.3d 1146, 1150-51 (9th Cir. 2002) (finding no substantial compliance).

The Ninth Circuit's application of these doctrines to the underlying facts in each of the foregoing cases is instructive, as no other Court of Appeals has analyzed the issue in the context of Rule 4007(c), although the Court of Appeals for the Fifth Circuit questioned, but left for another day, whether an exception would ever be justified in a Rule 4007(c) case, where it held instead that a creditor's failure to file an objection to dischargeability within the period specified by Rule 4007(c) resulted in a waiver of the objection, because the creditor failed to include in his earlier-filed motion "any statement specifying the factual circumstance of the debtor's alleged fraud and misrepresentation claims." *Covert v. McGuirt*, 879 F.2d 182, 184 (5th Cir. 1989).

---

[5] The doctrine is codified in Federal Rule of Civil Procedure 15(c), as incorporated by Bankruptcy Rule 7015.

In upholding a bankruptcy court order that dismissed an untimely-filed complaint under Bankruptcy Rule 4007, the Court of Appeals in *Marino*, acknowledged as follows:

> We have strictly construed …[Rule 4007], stating that, "although courts within the Ninth Circuit have indicated in dicta that there is an exception to Rule 4007(c)'s time limit for 'unique' or 'extraordinary' circumstances, the validity of the doctrine remains doubtful." *In re Kennerley*, 995 F.2d 145, 147 (9th Cir. 1993)(footnote omitted). We noted that if equitable powers to extend the time for filing under section 4007(c) exist at all, they are limited to "situations where a court explicitly misleads a party." (995 F.2d at 148)

> 37 F.3d at 1358, 1359.

In *Marino*, a creditor argued that its untimely-filed complaint should be considered timely based on the doctrines of substantial compliance and relation back of amended complaints. The creditor characterized an "Opposition to Sale" that it filed prior to the dischargeability complaint deadline simply as a "procedurally defective" complaint that provided the debtor with sufficient notice of the nature of and basis for its claim that should relate back to the date of its filing. *Id.* at p. 1356. The creditor claimed also that it told the debtor's attorney that the creditor intended to file a nondischargeability complaint.

The *Marino* Court dismissed the creditor's argument after it examined the "Opposition to Sale" and related documents "in light of the rules governing pleadings."[6]

The Court observed Rule 3, which provides that an action must be commenced by the filing of a complaint with the court and then observed Rule 8(a), which requires a pleading "that states a claim for relief to include a demand for judgment for the relief the pleader seeks."

The Court found no language in the "Opposition to Sale" and related documents that demanded a judgment of nondischargeabilty as required by Rule 8 and specifically that the "Opposition to Sale" was not captioned as a pleading, did not include the correct file number as required by Rules 7(a) and 10(a), and did not satisfy Bankruptcy Rule 7008(a) that requires that a complaint in an adversary proceeding must contain a statement that the proceeding is core or non-core. *Id*. at p. 1357.

The *Marino* Court emphasized that, "the policy of construing pleadings liberally does not justify the conclusion that any document filed in a court giving some notice of a claim satisfies the requirements of the Federal Rules." *Id.*  In the end, the Court found that the "Opposition to Sale" and related documents did not

---

[6]    While the Court of Appeals made no specific reference, Bankruptcy Rule 4007(e) provides that, "[a] proceeding commenced by a complaint filed under…[Rule 4007] is governed by Part VII of these rules." Part VII of the Federal Rules of Bankruptcy Procedure include Rule 7008, which incorporates Federal Rule of Civil Procedure, Rule 8 regarding "General Rules of Pleading."

satisfy the requirements for a complaint. Accordingly, because the later-filed complaint had nothing to relate back to, it was held not to be timely filed.

In *Dominguez*, the Ninth Circuit reached a different result. There, the debtor filed a chapter 11 petition and subsequently, an appointed-chapter 11 trustee filed a plan of reorganization.

In response to the trustee's plan, certain creditors filed a "Memorandum Re: Relationship between Order Confirming Trustee's Plan and Debtor's Discharge," in which they specifically alleged that confirmation of the trustee's plan should be denied because the plan satisfied all the statutory requirements for nondischargeability under §1141(d)(3). Although the creditors in *Dominguez* did not timely file a nondischargeability complaint, their counsel took the position that an adversary complaint was unnecessary based on his belief that §1141(d)(3) prohibited the debtor's discharge as a matter of law. 51 F.3d at 1505.

Ultimately, the bankruptcy court dismissed the creditors' complaint concluding that Bankruptcy Rule 4004(a) barred the creditors from objecting to the debtor's discharge, because they had not filed a complaint by the date of the confirmation hearing.

This Bankruptcy Appellate Panel then reversed the decision, finding that the creditors' pre-confirmation memorandum was sufficient to satisfy the requirements of a timely complaint on the basis that it clearly challenged the debtor's right to a

discharge and *contained specific factual allegations* and some evidence in support of those allegations. On further appeal, the Ninth Circuit affirmed the Panel, concluding that the post-confirmation hearing complaint related back to the creditors' memorandum filed before the hearing. Id. at 1510.

Finally, in *Markus*, the Ninth Circuit considered whether a "Motion to Object to Debtors [sic] Discharge and Convert the Chapter 7 Case to Chapter 13" was a complaint, albeit a deficient one, under Bankruptcy Rule 7008(a).

Examining the content of the motion, the Ninth Circuit found that it was "aimed at converting Markus's case from Chapter 7 to Chapter 13" and that the document failed to identify any code section or specific criteria for nondischargeability nor did it set forth any facts having to do with a claim for relief based on nondischargeability. 313 F.3d at 1150. Consequently, the appellate court concluded that it was not like the document in *Dominguez* where the main deficiency was that it was captioned a "Discharge Memorandum" rather than a "complaint" but otherwise cited the statutory criteria for nondischargeability, *referenced specific sections of an examiner's report as support for allegations* that the criteria were satisfied, and stated the claim for relief by asserting that the confirmation order could not discharge the debtor's debts. *Id.*

The court found instead that the document was "more like" the "Opposition to Sale" which it had deemed insufficient in *Marino*, "which also failed to demand

a judgment of nondischargeability, was not captioned as a pleading, and contained no statement that the proceeding was core or non-core." *Id.*  In the end, the Court of Appeals found that the document, even if construed as meeting the requirements for a complaint, could not relate back because the motion pointed in a completely different direction than the later-filed complaint. Therefore, the complaint did not relate back to the motion and was untimely. Id. at 1150-51.

The Ninth Circuit cases teach that application of the substantial compliance doctrine is concerned with notice *and not just "some notice,"* but notice that substantially complies with the requirements of the Federal Rules of Bankruptcy Procedure. *In re Markus*, 313 F.3d at 1150 (framing the "dispositive question" as whether the timely-filed pleading put the debtor on notice that the creditor was objecting to her discharge); *In re Marino*, 37 F.3d at 1357 (the policy of construing pleadings liberally does not justify the conclusion that any document filed in a court giving some notice of a claim satisfies the requirements of the Federal Rules).

Of significance, and in addition to the analysis of the Ninth Circuit opinions, is that the type of notice required for nondischargeability complaints *based on fraud* is set forth in Federal Rules of Civil Procedure, Rules 8 and 9, which are made applicable to bankruptcy proceedings by Bankruptcy Rules 7008 and 7009.

Generally, under Rule 8(a), a complaint must contain (1) a short and plain statement of the grounds for the court's jurisdiction; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought. Rule 7008(a) imposes *the additional requirement* that the complaint contain a statement that the proceeding before a bankruptcy judge is core or non-core.

When fraud is alleged, *Rule 9(b) requires more*.

The Court of Appeals for the Third Circuit has held that, when a claim "sound[s] in fraud," the complaint requires "well-pleaded allegations of fraudulent misrepresentations or omissions." *In re Rockefeller Ctr. Properties, Inc. Sec Litig*., 311 F.3d 198, 212 (3d Cir. 2002)(*citing, In re Burlington Coat Factory Sec. Litig*., 114 F. 3d Cir. 1997); *In re Westinghouse Sec. Litig*., 90 F. 2d 696, 707 (3d Cir. 1996).

Also applying this *heightened* requirement to Bankruptcy Rule 4007(c), the Ninth Circuit Bankruptcy Appellate Panel, in dismissing a late-filed complaint recited Ninth Circuit holdings and emphasized that, under that rule, "a party must state with particularity the circumstances constituting fraud." *Miyasaki v. Lui (In re Lui)*, Adv. 12-05220, Opinion at page 11, (B.A.P. 9th Cir. 2014)(Attached to this Brief.); [App. pp. 020-027]. (*Citing*, *Kearns v. Ford Motor Co*., 567 F.3d 1120, 1124 (9th Cir. 2009)).

> [Civil] Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong. Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged. A party alleging fraud must 'set forth more than the neutral facts necessary to identify the transaction.'

*Kearns* at 1124-25. "Fraud can be averred either directly, by specifically averring fraud, or indirectly, by alleging facts that, if true, would necessarily constitute fraud even if the word 'fraud' is not used." Id. at 1124. "[M]ere conclusory allegations of fraud are insufficient." *Moore v. Kayport Package Express*, 885 F.2d 531, 540 (9th Cir. 1989).

Adding to the Ninth Circuit's analysis is the analysis of the Court of Appeals for the Fifth Circuit when it held that a creditor's failure to file an objection to dischargeability within the period specified by Rule 4007(c) resulted in a waiver of its objection to dischargeablity, because the creditor failed to include in his earlier-filed motion "any statement specifying the factual circumstance of the debtor's alleged fraud and misrepresentation claims." *Covert v. McGuirt*, *supra*, 879 F.2d at 184.  The Court was clear in its opinion that the earlier-filed filing did not plead the alleged fraud and misrepresentation at issue with the requisite particularity by *merely reciting by reference a lawsuit in another court that involved allegations of fraud and misrepresentation*. *Id.* at 183-184.

C. <u>Analysis</u>

i.   <u>Stated Intention To File A Complaint in the Future Precluded Treating the Plan Objection as a Complaint</u>

At the outset, NVE's Plan Objection stated expressly that, "NVE will be filing a complaint to determine dischargeability." ¶ 10 of Plan Objection. [Dkt. 24][App. p. 011].

The logical and indisputable interpretation of this statement is NVE's clear acknowledgement that the Plan Objection was not a dischargability complaint, because NVE expressed that intended to file a complaint to determine dischargeability, ostensibly sometime in the future.

Rather than stating that it *intended to file* a complaint, NVE could have either filed the complaint itself within the Rule 4007(c) deadline period, which it did not do, or it could have filed a motion to extend the 60-day deadline as is permitted by Rule 4007(c), which it also did not do.

NVE was active in the bankruptcy case. It was not misled. It filed its Plan Objection *almost one month* prior to the Rule 4007(c) deadline. It could easily have ascertained the dischargeability complaint deadline and could easily have filed a motion to extend the deadline if a valid reason to do so existed. It did not do so.

Is NVE's mere assertion that it intended to file a complaint sometime in the future sufficient to preserve compliance with the Rule 4007(c) deadline, which the *Marino* Court held must be strictly construed? *Marino* at 37 F.3d at 1358, 1359.

If the answer to that question is affirmative, Bankruptcy Rule 4007(c) would be rendered meaningless. As a matter of strategy, any plaintiff or movant could file a "statement of intention" to preserve the right to file a dischargeabilty complaint at a later date (conceivably years down the road). The Bankruptcy Rules do not provide for any such filing. The Bankruptcy Rules do, however, provide an option of a timely-filed motion to request the extension of the deadline.

Aside from its express statement in its Plan Objection, NVE can in no way argue that there were "unique" or "extraordinary" circumstances that existed or that it was in any way misled. When it filed its Plan Objection, it still had almost one additional month to file a timely dischargeablity complaint.

For these reasons alone, the Bankruptcy Court erred by issuing its July 24, 2017 Opinion and Order that effectively enabled NVE to convert the Plan Objection to a complaint objecting to dischargeability so that the complaint would be deemed to be timely filed.

Rule 4007(c) must be strictly construed. *Covert*, 879 F.2d at 184 (5th Cir. 1989); *In re Marino* at 37 F.3d at 1358, 1359; *In re Kennerly* at 995 F.2d at 148.

## ii.    **The Plan Objection Fails to Comply With the "Rules of Pleading"**

*In re Orfa Corp. of Philadelphia*, 170 B.R. 257 (E.D. Pa 1994) (*Quoting, in re Command Services Corp.* 102 B.R. 905 (Bankr. N. D. N.Y 1989). ("Generally speaking, most courts are willing to overlook deficiencies in a pleading including errors in presenting a complaint as a motion and vice versa, so long as the pleadings substantially comply with the rules of pleading.")

The pleadings in this case, however, were more akin to those in *Marino* and *Markus* than those in *Dominguez*. The Plan Objection simply does not comply with Rules 8 and 9.

Rule 8 provides that a complaint must contain: (1) a short and plain statement of the grounds for the court's jurisdiction; (2) a short and plain statement that claims showing that the pleader is entitled to relief; and (3) a demand for the relief sought.  Additionally, Bankruptcy Rule 7008(a) requires that a pleading in an adversary proceeding "also contain a reference to the name, number, and chapter of the case under the Code to which the adversary relates…[and] a statement that the proceeding is core or non-core."

Measured against Rule 8, NVE's Plan Objection failed to state the grounds for the court's jurisdiction.

The Plan Objection also failed to state whether the proceeding was core or non-core as required by Bankruptcy Rule 7008, one of the omissions that was found in *Marino* to be fatal to invoking an exception to Rule 4007(c).

While the Plan Objection referred to Bankruptcy Code Sections 1328(c)(2) and 523(a) as a basis for non-dischargeability, no fact to support the elements of either section were pleaded. More important, the Plan Objection failed to state with particularity the circumstances constituting fraud to satisfy Rule 9(b). *Kearns*, 567 at p.1124 (9th Cir. 2009).

Instead, the NVE made reference only to an action that was pending in Federal Court in New Jersey. NVE *does not recite the specific averments* in the Complaint that initialed that action. ¶ 1 of Plan Objection. [Dkt. #24][App. p. 009].

As was true with the Fifth Circuit's analysis in *Covert*, the mere recital of a lawsuit that involved allegations of fraud and misrepresentation was not sufficient to meet the *heightened* pleading requirements of Rule 9. 879 F.2d at 183-184.

The Plan Objection here *provided only a very abbreviated summary* of the basis of New Jersey action, without the specificity required by Rule 9(b), where it stated simply that, "…the Debtor was NVE's former Vice President of Sales, and is alleged to be the lynchpin of two conspiracies among NVE's former employees and outside brokers and distributors to steal money, products and opportunities from NVE." ¶ 8 of Plan Objection. [Dkt. #24][App. p. 010].

21

No other facts were pleaded.

The Plan Objection's summary did not meet the standard for pleading a fraud claim with the particularity required under Rule 9(b). *By contrast*, the Adversary Complaint that NVE filed after the Bankruptcy Court issued its Order of July 24, 2017, comes closer to meeting the heightened pleading standard of Rule 9(b), as it sets forth *30 to 40 specific factual averments*. [Dkt # 107[App. pp. 013-019].

Further, and similar to *Markus*, where a "Motion to Object to Debtors [sic] Discharge and Convert the Chapter 7 Case to Chapter 13" was "aimed at converting Markus's case from Chapter 7 to Chapter 13," the Plan Objection here was aimed only at a denial of the confirmation of Palmeroni's chapter 13 plan and not at seeking a declaration of non-dischargeability. See, 313 F.3d at 1150

The objective of the Plan Objection was to assure that Palmeroni's chapter 13 was not confirmed because: (a) the plan did not provide for the payment of NVE claim as reflected by its Proof of Claim, a claim which NVE declares should be non-dischargeable; and (b) Palmeroni purportedly acted in bad faith and failed to disclose all his assets on his bankruptcy schedules. ¶¶9, 11 and 12 of the Plan Objection. [Dkt # 24][App. pp. 009-012].

In examining the content of the Plan Objection as a whole, however, its purpose appears clearly aimed at defeating confirmation of Palmeroni's plan and not at objecting to his discharge.

Nevertheless, even if the Plan Objection can be construed in any manner to seek the non-dischargeability of NVE's claim, NVE has not pleaded facts with the specificity required by Rule 9.

The Plan Objection was not like the document in *Dominguez* where the main deficiency was that it was captioned a "Discharge Memorandum" rather than a "complaint" but otherwise cited the statutory criteria for nondischargeability, *referenced specific sections of an examiner's report as support for allegations* that the criteria were satisfied, and stated the claim for relief by asserting that the confirmation order could not discharge the debtor's debts.

Here, while there were references to statutory Bankruptcy Code sections, no facts were pleaded to support the elements of those sections.

The Plan Objection was not like the document in *In Pfeiffer v. Rand (In re Rand)*, 144 B.R. 253 (Bankr. S.D.N.Y. 1992), where the court determined that a letter objecting to dischargeability filed by a pro se plaintiff could be deemed a complaint because it "sufficiently laid out Pfeiffer's objection to the dischargeability of her debt."

The Plan Objection also was not like the document in *Miller v. Levine (In re Levine)*, 132 B.R. 464, 465 (Bankr. M.D. Fla. 1991) entitled "Objection to Dischargeability" that specifically described the fraudulent circumstances leading to the claim and the justification for nondischargeability and quoted the pertinent parts of Section 523.

## **CONCLUSION**

For all of these reasons, the Bankruptcy Court erred by issuing its July 24, 2017 Opinion and Order that effectively enabled NVE to convert the Plan Objection to a complaint objecting to dischargeability so that the complaint would be deemed to be timely filed.  The Third Circuit has not adopted an exception to the strict construction of Bankruptcy Rule 4007(c) nor has it applied the relation back-doctrine in a Rule 4007(c) case. Even had the Third Circuit adopted an exception to the Rule, NVE would not have met the criteria analyzed by the Ninth Circuit and other courts. Accordingly, Palmerino respectfully requests that this Court reverse the Bankruptcy Court's Order and order the dismissal of  NVE's Motion to Amend.


**LAW OFFICE OF DAVID HARRIS**

By:  /s/ David J. Harris
        David J. Harris, Esquire
        Suite 700 - 69 Public Square
        Wilkes-Barre, PA  18701
        Telephone: (570) 823-9400        Dated: October 10, 2017
        dh@lawofficeofdavidharris.com

*Docket No.:  3:17-cv-01397-AR*

*UNITED STATES DISTRICT COURT*
*FOR THE MIDDLE DISTRICT OF PENNSYLVANIA*

*JESUS JOSE PALMERONI*

*Appellant*

*v.*

*N.V.E., INC.*

*Appellee*

## Certificate of Compliance With Rule 8015(a)(7)(B) or 8016(d)(2)

This brief complies with the type-volume limitation of Rule 8015(a)(7)(B) or 8016(d)
(2) because:

☒ this brief contains 5326 words, excluding the parts of the brief exempted by
Rule 8015(a)(7)(B)(iii) or 8016(d)(2)(D), or

❑ this brief uses a monospaced typeface having no more than 10½ characters per inch and
contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Rule
8015(a)(7)(B)(iii) or 8016(d)(2)(D).

_/s/David J. Harris_____          Date: October 10, 2017
Signature

Print   name   of   person   signing   certificate
of compliance:

David J. Harris
Counsel to Appellant, Jesus Jose Palmeroni

EXHIBIT "A"

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CHAPTER THIRTEEN |
| | : | |
| JESUS PALMERONI | : | BANKRUPTCY NO.: 5-16-bk-03073-JJT |
| a/k/a Joseph Palmeroni, | : | |
| d/b/a JJP Consulting, LLC | : | |
| | : | |
| DEBTOR | : | |
| | : | |
| N.V.E., INC., | : | {**Nature of Proceeding**: Motion to Amend |
| | : | Objection to Debtor's Chapter 13 Plan |
| MOVANT | : | (Doc. #64)} |
| | : | |
| vs. | : | |
| | : | |
| JESUS PALMERONI | : | |
| a/k/a Joseph Palmeroni, | : | |
| d/b/a JJP Consulting, LLC | : | |
| | : | |
| RESPONDENT | : | |

# <u>ORDER</u>

For those reasons indicated in the Opinion filed this date, **IT IS HEREBY**

**ORDERED** that the Motion to Amend Objection to Debtor's Chapter 13 Plan is granted.

Movant shall be given twenty-one (21) days from the date of this Order to initiate an adversary

proceeding in the above-captioned case.

By the Court,

John J. Thomas, Bankruptcy Judge

(CMS)

Date: July 24, 2017

[K:\Cathy\Opinions-Orders filed 2017\5-16-bk-03073-JJT_Palmeroni.pdf]

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CHAPTER THIRTEEN |
| | : | |
| JESUS PALMERONI | : | BANKRUPTCY NO.: 5-16-bk-03073-JJT |
| a/k/a Joseph Palmeroni, | : | |
| d/b/a JJP Consulting, LLC | : | |
| | : | |
| DEBTOR | : | |
| | : | |
| N.V.E., INC., | : | {**Nature of Proceeding**: Motion to Amend |
| | : | Objection to Debtor's Chapter 13 Plan |
| MOVANT | : | (Doc. #64)} |
| | : | |
| vs. | : | |
| | : | |
| JESUS PALMERONI | : | |
| a/k/a Joseph Palmeroni, | : | |
| d/b/a JJP Consulting, LLC | : | |
| | : | |
| RESPONDENT | : | |

# **OPINION**

A creditor, N.V.E., Inc., has filed a Motion (Doc. #64) seeking to amend its earlier

Objection to Debtor's Chapter 13 Plan (Doc. #24) to be a complaint objecting to dischargeability.

While not specifically articulated in the Motion, the apparent reason for this request is that the

deadline to file a complaint objecting to dischargeability has lapsed, but the earlier plan objection

was filed before that lapse.

A hearing was set on NVE's Motion and multiple briefs have been filed from both

Movant and Debtor vigorously arguing their respective positions.  There appears to be no

material facts in dispute.  NVE argues that it has been pursuing the Debtor for ten years in a

federal lawsuit for a sum in excess of $31 million based on fraud and other causes of action.

Early in this case, relief from the automatic stay was granted so the Movant could liquidate that

claim.

[K:\Cathy\Opinions-Orders filed 2017\5-16-bk-03073-JJT_Palmeroni.pdf]

Rule 4007(c) requires a complaint objecting to dischargeability be filed no later than 60 days after the meeting of creditors.[1]  In this case, the meeting was scheduled for August 29, 2016, and the applicable deadline was set for October 28, 2016.[2]  This Motion to amend the earlier plan objection was filed February 17, 2017.  The plan objection was filed September 30, 2016, before the complaint deadline.

The salient question is whether an objection to plan, filed within the complaint deadline, can substitute for the timely filing of a complaint under the rules?

While this issue has not been frequently addressed by the courts, there is some authority for a filed document to be amended to a pleading of a different nature.  *Wilkerson Fuel, Inc. v. Elliott*, 415 B.R. 214 (D.S.C. 2009) and the cases cited therein.  The basis for such action is found in Federal Rule of Civil Procedure 15(a)(2), incorporated into the bankruptcy rules by Federal Rule of Bankruptcy Procedure 7015.  The applicable portion of the Rule reads, "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires." Fed.R.Civ.P. 15.  In this case, the Movant is attempting to convert its Objection to Plan into a timely complaint objecting to dischargeability.  A similar case could be found in *In re Dominguez*, 51 F.3d 1502 (9th Cir. 1995) where a creditor attempted to convert a memorandum to a complaint in order to prevent a time bar.  The *Dominguez* court stated that the test was whether, when construed liberally, does the deficient pleading give the debtor fair notice of the plaintiff's claim and the grounds relied

---

[1]  It should be noted that the bankruptcy statute does not set a deadline to file a complaint objecting to dischargeability.  Such a deadline is set forth in the national bankruptcy rules.  As such, the ability of this Court to recognize the timeliness of a complaint objecting to dischargeability is not one of jurisdiction, but of claim-processing.  *Kontrick v. Ryan*, 540 U.S. 443, 454, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004) (Addressing issues with the related Rule 4004 dealing with the discharge).

[2]  While the 60 day deadline can be extended, it can only be extended under the conditions laid out in Rule 4007(c).  Rule 9006(b)(3).  Any extension of that time must be requested before the time expires.

APPELLANT'S APPENDIX 003

upon. *Id.* at 1508.  In *In re Classic Auto Refinishing v. Marino (In re Marino)*, 37 F.3d 1354,

1356–57 (9th Cir. 1994), the creditor attempted to convert an "Opposition to Sale" to a

complaint, and relief was denied because no where did it demand a "judgement of

nondischargeability as required by Rule 8(a)."  Similarly, a motion for relief from stay was

thought not to provide timely notice of a dischargeability issue since it did not specify the

"factual circumstances of the alleged fraud and misrepresentation claims."  *Matter of McGuirt*,

879 F.2d 182, 184 (5th Cir. 1989).[3]  The review of these cases is instructive because they

highlight the fundamental requirements of a pleading before I decide whether that pleading

merits the application of the liberal amendment provisions of Rule 15.  At the minimum, there

should be fair notice of the claim and its grounds, the factual circumstances of the alleged fraud,

and a demand of judgment of nondischargeablity.

Turning to the relevant pleading sought to be amended, I quote the following:

6. Apparently, by failing to provide notice to NVE, the Debtor hoped to avoid NVE having notice and an opportunity to object to the plan or *to object to the discharge of its $31 million claim in the Fraud Lawsuit*.

7. The debtor's proposed Chapter 13 Plan sets forth a zero value for NVE's $31 million Fraud Lawsuit.

8. As set forth in the pleadings in the Fraud Lawsuit, *the Debtor was NVE's former Vice President of Sales, and is alleged to be the lynchpin of two conspiracies among NVE's former employees and outside brokers and distributors to steal money, products and opportunities from NVE.*  As a Vice President of the company, the Debtor owed NVE a duty of loyalty, which fiduciary duty he breached as set forth in the Fraud Lawsuit.

9. NVE has filed simultaneously with this Objection to Confirmation of Debtor's proposed plan, a Proof of Claim in the amount of $31,250,462.93 representing estimated economic *damages as a result of Debtor's fraud, breaches of fiduciary duty and embezzlement.*

---

[3]  The court left for another day whether there existed a a notice-based exception to Rule 4007(c) where untimely complaints would otherwise be allowed.

APPELLANT'S APPENDIX 004

10.    *Pursuant to 11 U.S.C. §1328(c)(2) and §523(a) NVE's claims in the Fraud Lawsuit, and its proof of claim, are non-dischargeable. Specifically, §523(a)(4), provides an exception to discharge "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." §523(a)(4). NVE will be filing a complaint to determine dischargeability.*

11.    NVE objects to the chapter 13 Plan, not only *because it is improperly attempting to discharge NVE's non-dischargeable claim*, but also because the Debtor has clearly acted in bad faith throughout this bankruptcy process. By trying to hide the magnitude and basis of NVE's claims the Debtor also has violated his duties of disclosure to this Court, and the other parties in interest.

12.    In addition, the Debtor claims to only have a few hundred thousand dollars in assets, but given the millions of dollars fraudulently obtained by the Debtor from NVE, NVE believes that the Debtor is not accurately disclosing its assets. Creditors should not be forced to accept a Chapter 13 Plan where the Debtor has failed to include all of its assets. At the very least, the Plan confirmation should be adjourned until a full investigation of the Debtor's assets can be completed.

13.    For the foregoing reasons, NVE respectfully requests that Plan confirmation be denied, that the Debtor's asset disclosures be investigated, *that NVE's claim not be subject to a discharge order under the Chapter 13 Plan*, and that the Court grant NVE such other and further relief as is just and proper.

Objection to Debtor's Chapter 13 Plan, Doc. #24 (*Emphasis mine*)

I am satisfied that NVE's Objection to Plan contains sufficient information for me to consider it a Complaint Objecting to Dischargeability, timely filed, and leave is granted to amend the pleading and initiate an adversary proceeding within 21 days.

My Order will follow.

By the Court,

John J. Thomas, Bankruptcy Judge
(CMS)

Date: July 24, 2017

Official Form 417A (12/15)

## United States Bankruptcy Court
## MIDDLE DISTRICT OF PENNSYLVANIA

In re    **Jesus Jose Palmeroni**                                            ,

Case No.    **5:16-bk-03073**

Debtor

Address    **3308 Route 940**
**Suite 104**
**Mount Pocono, PA 18344**

Last four digits of Social Security or Individual Tax-

Chapter    **13**

Payer-Identification (ITIN) No(s)., (if any):    **xxx-xx-8061**

Employer's Tax Identification No(s). (if any):    _____

## NOTICE OF APPEAL AND STATEMENT OF ELECTION

### Part 1: Identify the appellant(s)

1.    Name(s) of appellant(s):   **Jesus Jose Palmeroni**

2.    Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject of this appeal: N.V.E. should not be allowed to file an adversary proceeding beyond the deadline to file.

For appeals in an adversary proceeding.
☐ Plaintiff
☐ Defendant
☐ Other (describe) _____

For appeals in a bankruptcy case and not in an adversary proceeding.
☑ Debtor
☐ Creditor
☐ Trustee
☐ Other (describe) _____

### Part 2: Identify the subject of this appeal

1.    Describe the judgment, order, or decree appealed from:   **Granting motion to amend objection to chapter 13 plan and allow late filing of adversary proceeding.**
2.    State the date on which the judgment, order, or decree was entered:   **July 24, 2017**

### Part 3: Identify the other parties to the appeal

List the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their attorneys (attach additional pages if necessary):

1.    Party:    **Jesus Jose Palmeroni**    Attorney:    **Robert A. Vort**
**2 University Plaza, Hackensack, NJ 07601**
**201-342-9501**

Official Form 417A (12/15)

Randall W. Turano
802 Monroe Street, Stroudsburg, PA 18360
570-424-9808

2.   Party:   **N.V.E., INC.**    Attorney:   **James William Boyan, III**
**21 Main Street, Suite 200, Hackensack, NJ 07601**
**201-488-8200**

**Aiden P. O'Connor**
**21 Main Street, Suite 200, Hackensack, NJ 07601**
**201-488-8200**

**Samuel J. Samaro**
**21 Main Street, Suite 200, Hackensack, NJ 07601**
**201-488-8200**

**Megan Gorman Cohen**
**21 Main Street, Suite 200, Hackensack, NJ 07601**
**201-488-8200**

**Peter George Erdely**
**1500 Market Street, 12th Floor, East Tower**
**Philadelphia, PA 19102**
**215-665-5650**

## Part 4: Optional election to have appeal heard by District Court (applicable only in certain districts)

If a Bankruptcy Appellate Panel is available in this judicial district, the Bankruptcy Appellate Panel will hear this appeal unless, pursuant to 28 U.S.C. § 158(c)(1), a party elects to have the appeal heard by the United States District Court. If an appellant filing this notice wishes to have the appeal heard by the United States District Court, check below. Do not check the box if the appellant wishes the Bankruptcy Appellate Panel to hear the appeal.

☐       Appellant(s) elect to have the appeal heard by the United States District Court rather than by the Bankruptcy Appellate Panel.

## Part 5: Sign below

/s/ Randall W. Turano                                    Date:   **August 7, 2017**

Signature of attorney for appellant(s) (or appellant(s)
if not represented by an attorney)

Name, address, and telephone number of attorney
(or appellant(s) if not represented by an attorney):
**802 Monroe Street, Stroudsburg, PA 18360**
**570-424-9808**

Fee waiver notice: If appellant is a child support creditor or its representative and appellant has filed the form specified in § 304(g) of the Bankruptcy Reform Act of 1994, no fee is required.

APPELLANT'S APPENDIX 007

ntcor341(03/15)

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

In re: Debtor(s) (name(s) used by the debtor(s) in the last 8 years, including married, maiden, and trade):

| | | |
|---|---|---|
| Jesus Jose Palmeroni | Chapter | 13 |
| aka Joseph Palmeroni, dba JJP Consulting, LLC | | |
| Debtor(s) | Case No. | 5:16–bk–03073–JJT |

Social Security No.:
  xxx–xx–8061

Employer's Tax I.D. No.:

## Notice

You were mailed a Meeting of Creditors Notice in the above–referenced case. A correction was made to the information contained in that notice as stated below:

- Alias of Debtor

The below dates may be the same as on the original notice, unless any changes were required. All other information on the original 341 Notice will remain in full force and effect.

The Meeting a Creditors will be held:

| | |
|---|---|
| Genetti Hotel, 77 East Market Street, Wilkes–Barre, PA 18701 | Date: August 29, 2016 |
| | Time: 12:00 PM |

**Deadline to:**

File a Complaint Objecting to Discharge of Debtor *or* to Determine Dischargeability of Certain Debts:   **October 28, 2016.**

Object to Exemptions:   **Thirty (30) days after the *conclusion* of the meeting of creditors.**

File a Proof of Claim (except a governmental unit):   **November 27, 2016.**

Initial requests for a continuance of hearing ( *L.B.F. 9013–4, Request to Continue Hearing/Trial with Concurrence*) shall be filed with the Court. Requests received by the Court within twenty–four (24) hours of the hearing will not be considered except in emergency situations. Additional requests for continuance must be filed as a Motion.

Requests to participate in a hearing telephonically shall be made in accordance with L.B.R. 9074–1(a).

Electronic equipment, including cell phones, pagers, laptops, etc., will be inspected upon entering the Courthouse. These devices may be used in common areas and should be turned to silent operation upon entering the Courtroom and Chambers.

Photo identification is required upon entering the Courthouse.

| | |
|---|---|
| **Address of the Bankruptcy Clerk's Office:**<br>U.S. Bankruptcy Court<br>274 Max Rosenn U.S. Courthouse<br>197 South Main Street<br>Wilkes–Barre, PA 18701<br>(570) 831–2500 | **For the Court:**<br>Clerk of the Bankruptcy Court:<br>Terrence S. Miller<br>By: karendavis |
| Hours Open: Monday – Friday 9:00 AM – 4:00 PM | Date: July 29, 2016 |

**IN THE UNITD STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

In re:

    **Jesus Palmeroni AKA Joseph**
     **Palmeroni, DBA JJP Consulting, LLC**

        **Debtor(s)**

**N.V.E., Inc.**

        **Movant(s)**

        **v.**

**Jesus Palmeroni AKA Joseph**
**Palmeroni, DBA JJP Consulting, LLC**

        **Respondent(s).**

Case No. 5:16-bk-03073-JJT
Chapter 13
Judge John J. Thomas

<u>**OBJECTION TO DEBTOR'S CHAPTER 13 PLAN**</u>

Now comes N.V.E., Inc. ("NVE"), by and through its undersigned attorneys, averring as follows:

1. NVE is an unsecured creditor, which has been pursuing the Debtor for ten years in a federal lawsuit pending in the District Court for the District of New Jersey, *NVE, Inc. Jesus Palmeroni*, Docket No. 06-5444, for in excess of $31 million based on claims of the Debtor's fraud, breach of loyalty and violations of Federal and New Jersey Civil RICO statutes (the "Fraud Lawsuit").

2. The filing of the Debtor's bankruptcy petition, and its conduct in this bankruptcy, including this Chapter 13 Plan, was in bad faith, motivated to avoid an adverse ruling in

the Fraud Lawsuit and to attempt to improperly and discreetly obtain a discharge of NVE's claims in the Fraud Lawsuit.

3. At the time the Debtor filed his Chapter 13 bankruptcy petition, the Debtor and NVE were in the midst of summary judgment motion practice in the Fraud Lawsuit, which is currently on hold as a result of Debtor's bankruptcy filing.

4. Incredibly, despite the pendency of the $31 million Fraud Lawsuit, the Debtor did not provide NVE with notice of the Meeting of Creditors.

5. Although the Debtor lists NVE as a creditor on his Schedule E/F submitted with the proposed Plan, the Debtor also failed to provide NVE with notice of the filing of its proposed Chapter 13 Plan, the deadline to object to the proposed Plan, or the Hearing to confirm the proposed Chapter 13 Plan.  See DE#17-3, 18.

6. Apparently, by failing to provide notice to NVE, the Debtor hoped to avoid NVE having notice and an opportunity to object to the plan or to object to the discharge of its $31 million claim in the Fraud Lawsuit.

7. The debtor's proposed Chapter 13 Plan sets forth a zero value for NVE's $31 million Fraud Lawsuit.

8. As set forth in the pleadings in the Fraud Lawsuit, the Debtor was NVE's former Vice President of Sales, and is alleged to be the lynchpin of two conspiracies among NVE's former employees and outside brokers and distributors to steal money, products and opportunities from NVE.   As a Vice President of the company, the Debtor owed NVE a duty of loyalty, which fiduciary duty he breached as set forth in the Fraud Lawsuit.

9.  NVE has filed simultaneously with this Objection to Confirmation of Debtor's proposed

    plan, a Proof of Claim in the amount of $31,250,462.93 representing estimated

    economic damages as a result of Debtor's fraud, breaches of fiduciary duty and

    embezzlement.

10. Pursuant to 11 U.S.C. §1328(c)(2) and §523(a) NVE's claims in the Fraud Lawsuit, and its

    proof of claim, are non-dischargeable.  Specifically, §523(a)(4), provides an exception to

    discharge "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or

    larceny."  §523(a)(4).  NVE will be filing a complaint to determine dischargeability.

11. NVE objects to the chapter 13 Plan, not only because it is improperly attempting to

    discharge NVE's non-dischargeable claim, but also because the Debtor has clearly acted

    in bad faith throughout this bankruptcy process.  By trying to hide the magnitude and

    basis of NVE's claims the Debtor also has violated his duties of disclosure to this Court,

    and the other parties in interest.

12. In addition, the Debtor claims to only have a few hundred thousand dollars in assets,

    but given the millions of dollars fraudulently obtained by the Debtor from NVE, NVE

    believes that the Debtor is not accurately disclosing its assets.  Creditors should not be

    forced to accept a Chapter 13 Plan where the Debtor has failed to include all of its

    assets.  At the very least, the Plan confirmation should be adjourned until a full

    investigation of the Debtor's assets can be completed.

13. For the foregoing reasons, NVE respectfully requests that Plan confirmation be denied,

    that the Debtor's asset disclosures be investigated, that NVE's claim not be subject to a

discharge order under the Chapter 13 Plan, and that the Court grant NVE such other and

further relief as is just and proper.

Respectfully submitted,

Date: 09/30/2016

*s/Peter G. Erdely*
PETER G. ERDELY
PA Bar ID. 79993
Law Offices of Peter G. Erdely LLC
1500 Market Street,
12th Floor, East Tower
Philadelphia PA  19102
Telephone:  215-665-5650
Facsimile:  215-689-0198
peter@erdelylaw.com
*Attorney for Creditor N.V.E., Inc.*

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>JESUS JOSE PALMERONI a/k/a JOSEPH PALMERONI, d/b/a JJP CONSULTING, LLC,<br><br>    Debtor | Civil Action No. 5:16-BK-3073-JJT<br><br>**ADVERSARY COMPLAINT** |
| N.V.E., INC.,<br><br>    Plaintiff<br><br>v.<br><br>JESUS JOSE PALMERONI,<br><br>    Defendant. | |

N.V.E., Inc. ("NVE" or the "Company"), by and through its attorneys, Pashman Stein Walder Hayden, P.C., avers as follows:

## INTRODUCTION

1.    The United States Bankruptcy Court for the Middle District of Pennsylvania has jurisdiction of this action pursuant to 28 U.S.C. § 157 because this matter arises out of the bankruptcy petition that Debtor Jesus Jose Palmeroni ("Debtor") filed in this Court.

2.    NVE's dischargeability complaint is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

3.    Venue is proper in this district because Debtor resides in this jurisdiction and filed for bankruptcy in this jurisdiction.

## **THE FRAUD LITIGATION**

4.      NVE has been pursuing Debtor for almost 11 years in a federal lawsuit pending in the U.S. District Court for the District of New Jersey captioned *NVE, Inc. v. Jesus Palmeroni, et al*. Civil Action Number 06-5444 (the "Fraud Lawsuit").

5.      NVE initiated the Fraud Lawsuit on November 15, 2006 by filing a 13-count complaint against a number of defendants including Debtor asserting, *inter alia*, claims for fraud, breach of the duty of loyalty and tortious interference.

6.      On May 18, 2011, NVE filed a First Amended Complaint ("FAC").  (A true and correct copy of which is attached hereto as Exhibit A).

7.      A trial date in the Fraud Lawsuit has been set for September 11, 2017.

8.      That trial will determine, among other things, whether Debtor is liable to NVE for fraud, breach of the duty of loyalty, and tortious interference.

9.      NVE does not submit to the entry of orders or final judgment on those issues by this Court.

## **STATEMENT OF FACTS**

10.      NVE is a New Jersey corporation and the manufacturer of nutritional supplements and energy products.

11.      Debtor was NVE's sales manager and Vice President of Sales from1999 until he was fired on January 3, 2006.

12.      Debtor was the lynchpin of two conspiracies among NVE's former employees and outside brokers and distributors to steal money, products, and opportunities from NVE.

13.      As a Vice President of NVE, Debtor owed the Company certain fiduciary duties, including the duty of loyalty.

14.      Debtor breached his fiduciary duties to the Company.

15.     Debtor's job required him to service existing wholesale customers for NVE's products and find new ones, for which he was paid a salary and a discretionary bonus.

16.     Beginning in 1999 and continuing through at least October 2009, Debtor orchestrated two separate and distinct schemes designed to steal money, products and opportunities from NVE.  (FAC ¶ 1).

17.     The total loss has been estimated to exceed $10 million.

<u>The Kickback Scheme</u>

18.     NVE's wholesale customers fall into two broad categories: brokers and distributers.

19.     Brokers are companies that have relationships with retail outlets such as convenience stores.  They are paid a percentage of the proceeds (typically 2.5% to 5%) from orders placed by their retail clients.

20.     Distributors are retailers that buy products for resale directly from NVE or through brokers.

21.     Beginning in 2000, Debtor used his position as Vice President of Sales to strong-arm brokers into paying a portion of the commissions they received from NVE back to him (hereinafter, referred to as the "Kickback Scheme").  (FAC ¶ 40).

22.     Debtor falsely represented to the brokers that he controlled the accounts and had authority to: (1) determine which brokers got which accounts; (2) make agreements with brokers; and (3) quote prices.

23.     Because the brokers relied to a significant extent on the NVE commissions for the survival of their respective businesses, Debtor was able to exploit their vulnerability to his benefit and to the brokers' detriment.

24.     Bank records obtained by NVE in discovery reveal that Debtor secured kickbacks of at least $1.2 million.

25.     The brokers were aware that these payments were unlawful and that Debtor was committing fraud and violating his duty of loyalty to NVE as its agent and employee by taking the payments.  (See FAC ¶¶ 37-52).

<u>The Distribution Scheme</u>

26.     For business reasons that are not relevant here, the wholesale price that NVE charges its international distributors is often lower than the domestic wholesale price.

27.     Beginning in 2001, Debtor and a co-defendant in the Fraud Lawsuit, Vincent Rosarbo, developed a scheme whereby they would buy NVE products at the reduced international price and then sell those products to various domestic distributors, often prior customers of NVE at a price lower than charged by NVE (hereinafter, the "Distribution Scheme").  (See FAC ¶ 53).

28.     Debtor and Rosarbo set up a company called Smart World, Inc. for the purpose of buying the products from NVE.

29.     Debtor and Rosarbo chose that name because it was similar to the name of one of NVE's international distributors called Smart World, B.V.  (See FAC¶¶53-70).

30.     Debtor and Rosarbo would place orders with NVE in the name of Smart World, B.V. for delivery in Europe.

31.     Then, before the products could be shipped overseas, Debtor and Rosarbo would take possession of the goods through Smart World, Inc. and divert them to a warehouse in New Jersey.

32.     Finally, using various entities under their control—Smart World, Inc., NRCG, American Wholesale Distribution, Inc. ("AWD"), and VAR Consulting ("VAR")—Debtor and Rosarbo would sell the diverted products to the Distribution Defendants in the United States. (See FAC¶¶53-70).

33.     NVE customers paid millions of dollars to these entities over several years, resulting in millions of dollars in fraudulently obtained profits to Debtor and Rosarbo at NVE's expense.  (See FAC¶¶53-70).

## DEBTOR'S PETITION FOR BANKRUPTCY

34.     Debtor filed this bankruptcy petition in bad faith in an attempt to improperly and discreetly obtain a discharge of NVE's claims in the Fraud Lawsuit.

35.     Incredibly, and despite the 11-year pendency of the Fraud Lawsuit, the Debtor did not provide NVE with notice of the Meeting of Creditors.

36.     Although the Debtor lists NVE as a creditor on his Schedule E/F submitted with the proposed Plan, the Debtor also failed to provide NVE with notice of the filing of its proposed Chapter 13 Plan, the deadline to object to the proposed Plan, or the Hearing to confirm the proposed Chapter 13 Plan.

37.     Apparently, by failing to provide notice to NVE, the Debtor hoped to avoid NVE having notice and an opportunity to object to the plan or to object to the discharge of its claim in the Fraud Lawsuit.

38.     The debtor's proposed Second Amended Chapter 13 Plan sets forth a zero value for NVE's Fraud Lawsuit.

39.     On July 24, 2017, this Court issued an order granting NVE's Motion for Leave to Amend its Objection to Debtor's Chapter 13 Plan and giving the Company 21 days to file an adversary complaint.

## NVE'S CLAIMS ARE NON-DISCHARGEABLE

40.     Pursuant to 11 U.S.C. §1328(c)(2) and §523(a) NVE's claims in the Fraud Lawsuit, and its proof of claim, are non-dischargeable.

41.     More specifically, Section 523 (a) (2) (A) provides an exception to discharge for debts for money or property "to the extent obtained by -- false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523 (a)(2)(A).

42.     In addition, Section 523(a)(4), provides an exception to discharge "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. §523(a)(4).

43.     Finally Section 523 (a)(6) provides an exception to discharge for debts "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).

## COUNT I
(Determination of Dischargeability)
11 U.S.C. §523(a)

44.     NVE incorporates the above allegations by reference as if set forth fully herein.

45.     Based on the facts and law set forth above, this Court should determine that Debtor's debts to NVE are excepted from discharge under 11 U.S.C. § 523(a).

WHEREFORE, NVE requests:

A.      An order determining Debtor's debts to NVE as alleged above are excepted from discharge pursuant to 11 U.S.C. §523(a).

B.      For other equitable relief this Court may determine is fair and just.

**PASHMAN STEIN WALDER HAYDEN**
A Professional Corporation
*Attorneys for Creditor N.V.E., Inc.*
/s/ Samuel J. Samaro
SAMUEL J. SAMARO
Court Plaza South
21 Main Street - Suite 200
Hackensack, New Jersey 07601
Telephone:  201-488-8200
Facsimile:  201-488-5556
ssamaro@pashmanstein.com

**In re: BEATRICE LUI, Debtor.**
**MARGARET EVE-LYNNE MIYASAKI,**
**Appellant,**
**v.**
**BEATRICE LUI, Appellee.**

**BAP No. NC-13-1037-JuKiD**
**Bk. No. 12-55239**
**Adv. No. 12-05220**

**UNITED STATES BANKRUPTCY**
**APPELLATE PANEL OF THE NINTH**
**CIRCUIT**

**Filed March 7, 2014**

**NOT FOR PUBLICATION**

MEMORANDUM[*]

Argued and Submitted on February 20, 2014
at San Francisco, California

Appeal from the United States Bankruptcy
Court
for the Northern District of California

Honorable Stephen L. Johnson, Bankruptcy
Judge, Presiding

Appearances: Paul G. McCarthy, Esq. argued
for appellant Margaret Eve-Lynne Miyasaki;
Melanie Tavare, Esq. argued for appellee
Beatrice Lui.

Before: JURY, KIRSCHER, and DUNN,
Bankruptcy Judges.

Page 2

Judgment creditor Margaret Eve-Lynne
Miyasaki (Appellant) appeals from the
bankruptcy court's order dismissing her
nondischargeability complaint against
chapter 13[1] debtor Beatrice Lui as untimely
filed under Rule 4007(c).

The bankruptcy court found that ¶ 6 in
Appellant's objection to confirmation of

debtor's plan (Objection) filed prior to the bar
date set for the filing of nondischargeability
complaints did not substantially comply with
the pleading requirements for a complaint
under Civil Rule 8(a).[2] As a result, her late-
filed complaint did not relate back to the date
of her Objection. We agree and AFFIRM.

**I. FACTS**

The facts are undisputed. On June 1,
2005, debtor executed a $50,000 promissory
note in favor of the late Richard Graber as
partial payment for real property located on
Serena Way, Santa Clara, California
(property). Debtor was Graber's daughter-in-
law.

On November 4, 2005, Graber,
Appellant's father, assigned the note to her.
The note was fully due and payable on June 1,
2010, in the amount of $65,000. Debtor
made no payments on the note. Appellant
filed a state court collection action against
debtor and obtained a judgment in the
amount of $89,558.67

Page 3

against her on March 20, 2012, which
Appellant recorded as a lien against the
property on April 24, 2012.

Debtor filed her chapter 13 petition on
July 13, 2012. Debtor listed Chase Bank NA
(Chase) as holding the first and second deeds
of trust against the property with balances of
$484,128 and $50,164, respectively.
Appellant's judicial lien was evidently third in
priority; however, debtor listed Appellant as
an unsecured creditor in Schedule F with a
claim in the amount of $89,558.67.

On July 30, 2012, Appellant's state court
attorney, Paul McCarthy, filed a proof of
claim (POC) on her behalf which asserted a
secured claim in the amount of $89,558.67
against the property and an unsecured claim
for $2,822.10. Following the filing of the POC,



APPELLANT'S APPENDIX 020

debtor sent notice of the meeting of creditors to McCarthy which set October 26, 2012, as the deadline to object to debtor's discharge or to challenge dischargeability of certain debts.

Debtor's plan provided for monthly payments of $280 to the chapter 13 trustee for arrearages on the first deed of trust and zero percent payment to unsecured creditors.[3]

On August 24, 2012, Appellant filed an objection to confirmation of debtor's plan. Paragraph 6 of the Objection, which is at issue in this appeal, stated:

Page 4

> Miyasaki's claim arises from a $50,000 promissory note that the debtor executed on June 1, 2005 as partial payment for the property located . . . Serena Way, Santa Clara, California. The note was originally made to the late Richard Graber, the seller of . . . Serena Way, and later assigned to Miyasaki. The due date of the note was June 1, 2010 in the amount of $65,000. The debtor made no payments on the note nor did she offer to make payments. She represented herself in the state collection proceedings and made it clear that she had never intended to pay the promissory note and had signed it to induce Mr. Graber to convery [sic] . . . Serena Way to her. Miyasaki believes that, accordingly, the debt was incurred through fraud and is thereby non-dischargeable under 11 U.S.C. section 523(a)(2). Miyasaki intends to file an adversary proceeding on this issue.

On November 16, 2013, three weeks after the October 26, 2012 deadline for filing

nondischargeability complaints, Appellant filed her complaint seeking to except the debt owed to her from discharge, alleging that debtor incurred the debt by fraud. Debtor moved to dismiss the complaint as late filed under Rule 4007(c). Appellant opposed, claiming that the late-filed adversary complaint related back to ¶ 6 of her Objection, which was filed on August 24, 2012, almost two months before the October 26, 2012 deadline for filing dischargeability complaints. In support of her relation-back theory, Appellant maintained that ¶ 6 provided debtor with fair notice that Appellant's claim for nondischargeability was based on fraud, and that debtor was not prejudiced by the three-week late filing of the adversary complaint.

Debtor argued in response that ¶ 6 of Appellant's Objection failed to meet the criteria for a complaint under Civil Rule 8 and Rule 7008 because it did not (1) provide a basis for the bankruptcy court's jurisdiction; (2) make a demand for relief; or (3) state whether the matter was core or non-core. According

Page 5

to debtor, application of the relation-back doctrine was not warranted under the facts and thus Appellant's complaint was time barred.

At the January 14, 2013 hearing on the matter, the bankruptcy court applied the relevant Ninth Circuit case law construing the substantial compliance and relation back doctrines and agreed with debtor. The court dismissed Appellant's adversary proceeding by order entered on January 17, 2013. Appellant timely appealed.

## II. JURISDICTION

The bankruptcy court had jurisdiction over this proceeding under 28 U.S.C. §§ 1334



APPELLANT'S APPENDIX   021

and 157(b)(2)(A) and (I). We have jurisdiction under 28 U.S.C. § 158.

### III. ISSUE

Whether the bankruptcy court erred by deciding that the substantial compliance and relation back doctrines did not make Appellant's complaint timely.

### IV. STANDARD OF REVIEW

Whether a pleading substantially complies with Civil Rule 8(a) is a question of law which we review de novo. We also review a Civil Rule 15(c)(2)[4] relation-back decision de novo. <u>Dominguez v. Miller (In re Dominguez)</u>, 51 F.3d 1502, 1508 (9th Cir. 1995); <u>Classic Auto Refinishing, Inc. v. Marino (In re Marino)</u>, 143 B.R. 728 (9th Cir. BAP 1992), <u>aff'd</u>, 37 F.3d 1354 (9th Cir. 1994).

Page 6

### V. DISCUSSION

Rule 4007(c) provides:

> A complaint to determine the dischargeability of any debt pursuant to § 523(c) of the Code shall be filed not later than 60 days following the first date set for the meeting of the creditors held pursuant to § 341(a). The court shall give all creditors not less than 30 days notice of the time so fixed in the manner provided in Rule 2002. On motion of any party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision. The motion shall be made before the time has expired.

Rule 4007(c) is strictly construed in the Ninth Circuit. <u>In re Marino</u>, 37 F.3d at 1359.

Here, there is no dispute that McCarthy received notice of the October 26, 2012 deadline for filing dischargeability complaints well in advance of the deadline and that Appellant's complaint against debtor was not filed or served until three weeks after the bar date had passed.

### A. The Substantial Compliance and Relation Back Doctrines

Although untimely, a bankruptcy court may consider a nondischargeability complaint timely based on the doctrines of substantial compliance and relation back of amended pleadings. <u>In re Marino</u>, 37 F.3d 1354 (finding no substantial compliance); <u>In re Dominguez</u>, 51 F.3d at 1510 (finding substantial compliance and relation back); <u>Markus v. Gschwend (In re Markus)</u>, 313 F.3d 1146, 1150-51 (9th Cir. 2002) (finding no substantial compliance). The Ninth Circuit's application of these doctrines to the underlying facts in each of the foregoing cases is instructive.

In <u>Marino</u>, the creditor received timely written notice of the bankruptcy and the bar date for filing claims under § 523(c). The creditor's counsel filed an "Opposition to Sale"

Page 7

before the bar date and told the debtor's attorney that the creditor intended to file a nondischargeability complaint. The complaint was filed nine days late. The debtor filed an answer asserting the bar date as an affirmative defense and moved to dismiss the complaint. The bankruptcy court dismissed the complaint. On appeal, this Panel and the Ninth Circuit affirmed. In discussing whether the "Opposition to Sale" and the documents filed with it substantially complied with requirements of a complaint, the Ninth Circuit noted that Civil Rule 8(a) requires a pleading that states a claim for relief to "include a demand for judgment for the relief



the pleader seeks." 37 F.3d at 1357. The court found no language in the opposition or documents filed with it that demanded a judgment of nondischargeability as required by Rule 8(a). In addition, the court noted that the opposition was not captioned as a pleading, did not include the correct file number as required by Rules 7(a) and 10(a) or satisfy the additional requirement of Rule 7008(a) that in an adversary proceeding before a bankruptcy judge, a complaint shall contain a statement that the proceeding is core or non-core. Id.

The Ninth Circuit emphasized that the purpose of a pleading is to give the defendant fair notice of the plaintiff's claim and the grounds for the claim. Id. "However, the policy of construing pleadings liberally does not justify the conclusion that any document filed in a court giving some notice of a claim satisfies the requirements of the Federal Rules." Id. In the end, the court found that the opposition and the documents filed with it did not satisfy the requirements for a complaint.

Page 8

Accordingly, because the later filed complaint had nothing to relate back to, it was not timely filed.

In Dominguez, the Ninth Circuit reached a different result. There, debtor filed its chapter 11 petition and subsequently the trustee filed a plan. In response to the trustee's plan, creditors filed a "Memorandum Re: Relationship between Order Confirming Trustee's Plan and Debtor's Discharge," in which they alleged that confirmation of the trustee's plan should be denied because the plan satisfied all the statutory requirements for nondischargeability under § 1141(d)(3).[5] Creditors did not file a timely nondischargeability complaint. Creditors' counsel took the position that an adversary complaint was unnecessary based on his

belief that § 1141(d)(3) prohibited the debtor's discharge as a matter of law. 51 F.3d at 1505.

At the confirmation hearing, the bankruptcy court deferred its decision on the creditors' memorandum and directed them to submit their argument as a declaratory judgment action. The court also suggested that Rule 4004(a) barred the creditors from objecting to the debtor's discharge because they had not filed a

Page 9

complaint by the date of the confirmation hearing. The creditors responded by filing a complaint, after the confirmation hearing. In response, the debtor asserted Rule 4004(a) as an affirmative defense. The bankruptcy court dismissed the creditors' complaint.

This Panel reversed, finding that the creditors' pre-confirmation memorandum was sufficient to satisfy the requirements of a timely complaint on the basis that it clearly challenged the debtor's right to a discharge and contained factual allegations and some evidence in support of those allegations. On further appeal, the Ninth Circuit affirmed the Panel, concluding that the post-confirmation hearing complaint related back to the creditors' memorandum filed before the hearing. Id. at 1510.

Finally, in Markus, the Ninth Circuit considered whether a "Motion to Object to Debtors [sic] Discharge and Convert the Chapter 7 Case to Chapter 13" was a complaint, albeit a deficient one, under Rule 7008(a). In examining the content of the motion, the Ninth Circuit found that it was "aimed at converting Markus's case from Chapter 7 to Chapter 13." 313 F.3d at 1150. The court found that the document failed to identify any code section or criteria for nondischargeability nor did it set forth any facts having to do with a claim for relief based on nondischargeability. Consequently, the appellate court concluded that it was not like



the document in <u>Dominguez</u> where the main deficiency was that it was captioned a "Discharge Memorandum" rather than a "complaint" but otherwise cited the statutory criteria for nondischargeability, referenced

Page 10

specific sections of the examiner's report as support for allegations that the criteria were satisfied, and stated the claim for relief by asserting that the confirmation order could not discharge the debtor's debts. <u>Id.</u> The court found that instead, the document was "more like" the "Opposition to Sale" which it had deemed insufficient in <u>Marino</u>, "which also failed to demand a judgment of nondischargeability, was not captioned as a pleading, and contained no statement that the proceeding was core or non-core." <u>Id.</u> In the end, the Ninth Circuit found that the document, even if construed as meeting the requirements for a complaint, could not relate back because the motion pointed a completely different direction than the later filed complaint. Therefore, the complaint did not relate back to the motion and was untimely. <u>Id.</u> at 1150-51.

**B. Analysis**

The forgoing cases teach that application of the substantial compliance doctrine is concerned with notice and not just "some notice," but notice that substantially complies with the requirements of the Federal Rules of Bankruptcy Procedure. <u>In re Markus</u>, 313 F.3d at 1150 (framing the "dispositive question" as whether the timely filed pleading put the debtor on notice that the creditor was objecting to her discharge); <u>In re Marino</u>, 37 F.3d at 1357 (the policy of construing pleadings liberally does not justify the conclusion that any document filed in a court giving some notice of a claim satisfies the requirements of the Federal Rules).

The type of notice required for nondischargeability complaints based on fraud is set forth in Civil Rules 8 and 9,

Page 11

made applicable to bankruptcy proceedings under Rules 7008 and 7009. Generally, under Civil Rule 8(a), a complaint must contain (1) a short and plain statement of the grounds for the court's jurisdiction; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought. "[T]he main purpose of the complaint is to provide notice of what plaintiff's claim is and the grounds upon which the claim rests . . . . [the] plaintiff must at least set forth enough details so as to provide a defendant and the court with a fair idea of the basis of the complaint and the legal grounds claimed for recovery." <u>Acequia, Inc. v. Clinton (In re Acequia, Inc.)</u>, 34 F.3d 800, 814 (9th Cir. 1994). Rule 7008(a) imposes the additional requirement that the complaint contain a statement that the proceeding before a bankruptcy judge is core or non-core.

When fraud is alleged, Civil Rule 9(b) requires more. Under that rule, "a party must state with particularity the circumstances constituting fraud." <u>Kearns v. Ford Motor Co.</u>, 567 F.3d 1120, 1124 (9th Cir. 2009).

> [Civil] Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong. Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged. A party alleging fraud must 'set forth more than the neutral facts



necessary to identify the transaction.'

Id. at 1124-25. "Fraud can be averred either directly, by specifically averring fraud, or indirectly, by alleging facts that, if true, would necessarily constitute fraud even if the word 'fraud' is not used." Id. at 1124. "[M]ere conclusory

Page 12

allegations of fraud are insufficient." Moore v. Kayport Package Express, 885 F.2d 531, 540 (9th Cir. 1989).

Paragraph 6 of Appellant's Objection does not substantially comply with the above criteria for a nondischargeability complaint based on fraud. In examining the content of her Objection as a whole, we find that its purpose appears "clearly aimed" at defeating confirmation of debtor's plan and not at objecting to debtor's discharge. The leading paragraphs relate to confirmation issues: in ¶ one, Appellant alleged that the plan ran afoul of § 1325(a)(5)(B)(ii) by not providing her with distributions with a value equal to the allowed amount of her claim and in ¶ two, she agreed with the trustee's objection to the plan that it did not comply with the requirements of § 1325(a)(6) in that it did not provide for arrears and/or on-going payments to junior lienholders on the property. The bulk of her remaining allegations relate to the valuation of the property and the inaccuracies or incomplete nature of information contained in debtor's petition. We construe these allegations as addressing Appellant's perception that the treatment of her claim under the plan was unfair.

Only at the end of her Objection in ¶ 6 does Appellant mention debtor's alleged fraud, that the debt was nondischargeable under § 523(a)(2), and that she intended to file an adversary proceeding on this issue. However, ¶ 6 does not make up for Appellant's failure to file a timely nondischargeability complaint. Although Appellant mentions § 523(a)(2) as a basis for her nondischargeability claim, we conclude that ¶ 6 does not contain enough details to provide

Page 13

debtor with a fair idea of the basis for Appellant's claim and the legal grounds claimed for recovery for several reasons.

First, Appellant fails to differentiate between § 523(a)(2)(A) and (B) and the justifiable reliance or reasonable reliance standards of those sections. Although counsel argued at the hearing on this matter that Appellant's fraud claim could only be under § 523(a)(2)(A), even in that case she does not mention facts showing Graber's reliance on debtor's misrepresentations at all.

Second, the neutral and conclusory facts as alleged do not meet the standard for pleading a fraud claim with the particularity required under Civil Rule 9(b). See Dominguez, 51 F.3d at 1508 (explaining that within the context of bankruptcy, courts construe deficient pleadings liberally, if the pleading substantially complies with requirements of a complaint under Civil Rule 9(b) by providing "fair notice of what the plaintiff's claim is and the grounds upon which it rests."); see also Kearns, 567 F.3d at 1124; Moore, 885 F.2d at 540.

Next, it does not appear that Appellant makes a demand for relief in the Objection pertaining to the nondischargeability of the debt. See In re Marino, 37 F.3d at 1357 (noting that there was no language in the Opposition or documents filed with it that demands judgment of nondischargeability as required by Civil Rule 8(a)). Instead, Appellant states in ¶ 6 that she intended to file an adversary proceeding based on her legal conclusion that debtor committed fraud.



-6-

Finally, there is no statement that the proceeding was core

Page 14

or non-core as required under Rule 7008(a). Id. at 1357. Although counsel argued at the hearing that implicitly the matter could only be core because Appellant alleged the debt was nondischargeable under § 523(a), the Marino court found it significant that this requirement for a complaint was lacking. We cannot simply stretch the substantial compliance doctrine to fit the notice requirements for a complaint through implication, especially when faced with the strict deadline under Rule 4007(c) for filing complaints objecting to the dischargeability of specific debts.

Due to these deficiencies, we conclude that ¶ 6 of Appellant's Objection is closer to the documents in Markus and Marino than Dominguez. Because this paragraph was inadequate to put debtor on notice of the claim against her, we agree with the bankruptcy court's assessment that ¶ 6 did not substantially comply with the requirements for a nondischargeability complaint. Therefore, Appellant's complaint filed on November 16, 2013, did not relate back to ¶ 6 of Appellant's Objection. As her complaint was untimely filed under Rule 4007(c), dismissal was proper.

**VI. CONCLUSION**

For the reasons stated, we AFFIRM.

--------

Notes:

<u>*</u> This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

1. Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. "Rule" references are to the Federal Rules of Bankruptcy Procedure and "Civil Rule" references are to the Federal Rules of Civil Procedure.

2. Civil Rule 8(a) is applicable to adversary proceedings in bankruptcy under Rule 7008.

3. Debtor also filed a motion to void Chase's second deed of trust lien, contending that it was wholly unsecured based on a recent appraisal of the property at $440,000. According to debtor, Chase's second lien was voidable because the balance due on its first deed of trust was greater than the value of the property.

4. Civil Rule 15 is applicable to adversary proceedings in bankruptcy under Rule 7015.

5. 1141(d)(3) provides:

> The confirmation of a plan does not discharge a debtor if--
>
>> (A) the plan provides for the liquidation of all or substantially all of the property of the estate; (B) the debtor does not engage in business after consummation of the plan; and (C) the debtor would be denied a discharge under section 727(a) of this title if the case were a case under chapter 7 of this title.

--------



APPELLANT'S APPENDIX   026

Miyasaki v. Lui (N.Y.E.D.) (B.A.P. 9th Cir., 2013)



APPELLANT'S APPENDIX   027